**Sok Ku HONG, Petitioner,**

v.

**UNITED STATES of America, et al., Respondents.**

**No. CIV.A. 02–1231–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 13, 2003.

Larry Lynn Lewis, Law Offices of J.W. Nesari L.L.C., Herndon, VA, for Petitioner.

William J. Howard, United States Attorney's Office, Alexandria, VA, for Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I.

This 28 U.S.C. § 2241 habeas corpus petition presents the question—unresolved in this circuit—whether due process requires an individualized bond hearing for a lawful resident alien with three marijuana misdemeanor convictions, who is denied admission to the United States on returning from a visit to Korea and placed in mandatory detention pursuant to § 236(c) of the Immigration and Nationality Act (INA)[1] pending resolution of his appeal of an order requiring his removal from the country. Put another way, the question is whether this alien, in custody pursuant to § 236(c) in these circumstances, has a liberty interest sufficient to trigger a due process right to a bond hearing.

### II.

Sok Ku Hong is a 30 year-old Korean citizen who was granted permanent legal resident status in the United States in June 1986. Hong's adult years as a permanent legal resident were not without conflict with the criminal justice system. His criminal history beginning in 1991 includes six arrests and at least three marijuana possession misdemeanor convictions.[2] It also appears from the record

---

1. 8 U.S.C. § 1226(c).

2. According to the Certified Administrative Record, which is part of the record in this proceeding, and the attachments to the parties' pleadings, Hong's criminal history commenced in 1991 when he was arrested for

that Hong has failed to comply with the federal income tax laws during his residence in this country.[3]

In the course of his years as a permanent legal resident, Hong has returned to his native Korea on several occasions. Thus, in May 1999, he traveled to Korea and remained there for approximately one year, returning to the United States in May 2000. On his next trip to Korea, in February 2001, Hong remained there only two months. Most recently, he left the United States for Korea in October 2001 and then sought to return slightly more than six months later, in April 2002.

On this occasion, Hong sought to reenter the United States on April 18, 2002, at Dulles International Airport (DIA) by presenting his Korean passport and U.S. resident alien card to inspecting Immigration and Naturalization Service (INS) agents. When he did so, INS agents, using this information, found Hong's name on an INS database that included resident aliens with criminal records. Hong was then taken to a secondary inspection area, where he provided an INS officer with a

sworn statement describing (i) the purpose of his trip to Korea, namely to visit his fiancé[4] and to address a weight problem and (ii) his criminal history. Based on Hong's criminal history and pursuant to § 212(a)(2)(A)(i)(II) of the INA,[5] the INS charged Hong with being removable to Korea. Hong was also taken into custody pursuant to § 236(c) of the INA.

On April 23, 2002, the Immigration Court issued a Notice of Hearing in Removal Proceedings, advising Hong, who was then in INS custody, that a video hearing was scheduled before an immigration judge on May 2, 2002. A hearing was thereafter held on May 2, 2002, as scheduled, at which Hong's counsel was present, but Hong was not, apparently because he had not yet been transported to an INS detention facility equipped with video conferencing capabilities. At Hong's counsel's request, the immigration judge agreed to continue the matter one week to allow Hong the opportunity to participate in the hearing in person. Thus, on May 2, 2002, Hong was sent a second Notice of Hearing in Removal Proceedings, advising that an-

driving on a suspended license. No conviction apparently resulted from that arrest. Thereafter, he was arrested for shoplifting in 1992. To avoid conviction for that offense, he agreed to perform 50 hours of community service. Next, a 1993 arrest for felony malicious wounding and destruction of property was "nolle prossed" for reasons that do not appear in this record. Then, in 1995, he was convicted of misdemeanor marijuana possession and received a 60–day jail sentence, which was suspended and he was placed on four years of probation conditioned on successful completion of a substance abuse program, performance of 40 hours of community service, and earning a G.E.D. It appears that Hong never earned the G.E.D. and, when he failed to perform the mandated community service, he was required to serve 60 days in jail. Just prior to receiving this sentence, in 1996, he was convicted a second time on a misdemeanor marijuana possession charge. A third similar conviction occurred in 1998.

And, in the course of oral argument, government counsel indicated that Hong admitted to inspecting agents at Dulles International Airport that he had incurred a fourth marijuana possession conviction in 1999.

3. Indeed, the only year that a federal income tax return was filed on Hong's behalf was 2001, after the initiation of these removal proceedings. As recognized by the immigration judge, this return, dated April 26, 2002, "was clearly prepared in anticipation of trying to develop an equity for these proceedings."

4. In testimony before an immigration judge, Hong explained further that he traveled to Korea on this occasion to seek his fiancé's parents' consent to their marriage.

5. 8 U.S.C. § 1182(a)(2)(A)(i)(II).

other hearing was scheduled before the immigration judge for May 9, 2002.

Hong appeared at the May 9, 2002 hearing, as scheduled. At the hearing, Hong, through counsel, sought relief from, and cancellation of, removal, pursuant to 8 U.S.C. § 1229b. Given Hong's request, and given counsel's representation that Hong wished to present testimony in support of his request, the immigration judge scheduled the matter for an evidentiary hearing on July 8, 2002. On that date, Hong again appeared represented by counsel, prepared to testify on his own behalf and to offer the testimony of several family members. The matter could not proceed, however, owing to the absence of a Korean interpreter. Thus, the evidentiary hearing was continued, this time to July 22, 2002.

Hong appeared before the immigration judge on July 22, 2002, and, utilizing the services of a Korean interpreter, testified on his own behalf. Hong's father, mother and fiancé also testified at the hearing with the assistance of the Korean interpreter. Immediately following the presentation of evidence and the arguments of counsel, the immigration judge rendered an oral decision, denying Hong's request for cancellation of removal and ordering him removed pursuant to § 212(a)(2)(A)(i)(II) of the INA. Hong appealed his cancellation denial and removal order to the Board of Immigration Appeals, which appeal remains pending.

On August 20, 2002, Hong filed this habeas petition, pursuant to 28 U.S.C. § 2241, seeking release from INS custody pending disposition of his appeal and completion of his immigration proceedings. More specifically, Hong contends that § 236(c), which by its terms mandates his detention, is unconstitutional as applied to him [6] because the Due Process Clause of the Fifth Amendment mandates that he receive an individualized bond hearing. The government disagrees, claiming that Hong's liberty interest as an inadmissible alien is too attenuated to require the process he demands, i.e., a bond hearing, and that he has already received all the process to which he is entitled.

## III.

### A.

■ At the outset, it is important to be clear about Hong's status at the time he was placed in INS custody at DIA on April 18, 2002. Was he, as the government contends, an inadmissible and excludable alien who had not yet crossed the threshold of this country's portal, or was he, as Hong argues, an alien who had crossed that threshold and been admitted,[7] but was subject to removal.[8] This distinction in status, as will appear, is of constitutional moment in this case.

There is no dispute that Hong gained permanent legal resident status in this

6. Early in these proceedings it was unclear whether Hong's attack on the constitutionality of § 236(c) was on an as applied basis, facial or both. It is now clear that Hong attacks the statute as it applies to him. It is also clear that § 236(c) is facially constitutional. See Welch v. Ashcroft, 293 F.3d 213 (4th Cir.2002).

7. Importantly, "admission" and "admitted" are defined in 8 U.S.C. § 1101(a)(13) as the "lawful entry of the alien into the United States after inspection and authorization by an immigration officer."

8. "Removal" proceedings include both "deportation" and "exclusion" proceedings, the former being the proceedings applicable to deportable aliens already present in the United States, while the latter proceedings are applicable to inadmissible aliens seeking admission into the country.

country in 1985 [9] and that he continued to enjoy that status when he left to visit Korea in October 2001. The question is whether his status changed when he returned from his visit to Korea and presented his credentials to INS agents at DIA in April 2002. To ascertain his status at that time, reference must first be made to 8 U.S.C. § 1101(a)(13)(C), which provides that as a general rule a lawful permanent resident "shall not be regarded as seeking admission into the United States." Importantly, however, the statute sets forth a number of exceptions to this general rule, including at least one that is plainly applicable here, namely the commission of "an offense identified in section 1182(a)(2) of this title." [10] Section 1182(a)(2), in turn, defines the classes of aliens ineligible for visas or admission to this country by virtue of their criminal history. Specifically, it provides, in pertinent part, as follows:

> [A]ny alien convicted of…(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance…is inadmissible.[11]

The application of these statutory provisions to the facts at bar compel the following conclusions:

(1) Hong, as a lawful permanent resident of the United States, would not ordinarily have had to seek admission to this country when he arrived at DIA on his return from visiting

---

9. A person "lawfully admitted for permanent residence" is defined in 8 U.S.C. § 1101(a)(20) as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."

10. Specifically, § 1101(a)(13)(C) provides that

> [a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien
> (i) has abandoned or relinquished that status,
> (ii) has been absent from the United States for a continuous period in excess of 180 days,
> (iii) has engaged in illegal activity after having departed the United States,
> (iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
> (v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or
> (vi) is attempting to enter at a time or place other than as designated by immigration

officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C).

It is unclear whether subsection (ii) also applies to Hong, as the record does not reflect the precise date in October 2001 that he departed for Korea.

11. The sole statutory exception to this provision is found in subsection (ii) and has no application here. This exception covers aliens who commit only one crime, provided:

> (I) the crime was committed when the alien was under 18 years of age, and the crime was committed (and the alien released from any confinement to a prison or correctional institution imposed for the crime) more than 5 years before the date of application for a visa or other documentation and the date of application for admission to the United States, or
> (II) the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

Korea. *See* 8 U.S.C. § 1101(a)(13)(C) (recognizing that as a general rule a lawful permanent resident "shall not be regarded as seeking admission into the United States").

(2) In this instance, however, because his record included three violations of state controlled substance laws, *i.e.*, three misdemeanor marijuana possession convictions, Hong was required to seek admission to the United States when he presented his credentials to INS agents at DIA. *See* 8 U.S.C. §§ 1101(a)(13)(C)(v), 1182(a)(2).

(3) INS authorities at DIA properly denied Hong admission to this country given that Congress has decreed that aliens seeking admission[12] with state or federal drug convictions are "inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(II).

(4) So, as an inadmissible alien, Hong was then subject to 8 U.S.C. § 1226(c), which mandates that the Attorney General hold in custody "any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." Moreover, this provision

allows release of Hong only in circumstances not present here.[13]

Hong attempts to avoid the conclusion that he is now an inadmissible alien by arguing that INS documents treat him only as an admitted, but deportable alien. There is, simply put, no persuasive record evidence for this argument, particularly given Hong's admission in the underlying administrative proceedings that he is, in fact, "inadmissible" under the statute.

Hong also argues, more fundamentally, that while the former statutory scheme recognized a distinction between aliens who are inadmissible or excludable and aliens who are admitted (or illegally present in the country), the current scheme does not recognize such a distinction and instead treats all categories of aliens the same. In support of this argument, Hong accurately relies on a split panel Ninth Circuit decision. The majority in *Xi v. INS*, 298 F.3d 832 (9th Cir.2002) clearly reached just this conclusion. Yet, it is Judge Rymer's dissent in *Xi* that has it right; Congress and the Supreme Court have long recognized such a distinction[14] and nothing in the IIRIRA[15] warrants the conclusion that Congress sought to make such a fundamental change in the statutory scheme governing aliens entering, and

8 U.S.C. § 1182(a)(2)(A)(ii).

**12.** "Admission," according to 8 U.S.C. § 1101(a)(13) occurs only *"after* inspection and authorization by an immigration officer." (Emphasis added). Hong did not pass this "inspection" owing to his criminal history and he thus never received the "authorization" necessary for admission. *Id.*

**13.** In this regard, the statute provides, *inter alia,* as follows:

The Attorney General may release an alien [who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title]...only if the Attorney General decides...that release of the alien from custody is necessary [under the

federal witness protection program statute, 18 U.S.C. § 3521]..., and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.
8 U.S.C. § 1226(c)(2).

**14.** *See, e.g., Landon v. Plasencia,* 459 U.S. 21, 25, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *Chew v. Colding,* 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953).

**15.** Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546.

within, this country. *See Xi*, 298 F.3d at 840–43 (Rymer, J., dissenting).

Beyond this, Hong emphasizes that he is a long-term (more than 17 years) lawful permanent resident and that there is no justification for treating him less favorably than an alien who enters the country illegally by sneaking across the porous borders. Such an alien, he points out, would be removable, not inadmissible. In Hong's view, common sense dictates that he should be treated at least as favorably, and indeed more favorably, than a deportable alien who sneaks into this country. The short answer to this contention is that the law is otherwise. Lawful permanent residency is a creature of statute. What Congress has chosen to confer in this regard it may take away or limit, as indeed it has in 8 U.S.C. §§ 1101(a)(13), 1182(a) and 1226(a). In so doing, Congress acts well within the scope of its authority.[16] Nothing is more fundamental to this country's sovereignty than the power to control its borders. And, in this regard, as the Supreme Court has long recognized, Congress has sensibly and appropriately drawn a distinction between aliens seeking admission, but found inadmissible, and aliens who are admitted or who enter illegally. *See supra* n. 14.

In summary, Hong is plainly an inadmissible alien. Notwithstanding his former lawful resident status, he was required, because of his controlled substance convictions, to seek admission to this country upon his return from his visit to Korea. He was properly denied admission because his convictions, pursuant to law, rendered him inadmissible. In other words, the law operated properly to preclude Hong from crossing the threshold of this country's portal. The law then operated to require mandatory custody for Hong pending his removal to Korea. And, the question thus presented is whether 8 U.S.C. § 1226(c), which mandates Hong's detention without a bond hearing, is unconstitutional as applied to him. It remains, therefore, to inquire whether Hong's liberty interest as an inadmissible alien is sufficient to trigger a Fifth Amendment Due Process right to an individualized bond hearing.

**B.**

■ To begin with, it is necessary to note, as the parties concede, that there is no directly controlling Supreme Court or circuit authority on whether the liberty interest of an inadmissible alien, in custody under § 1226(c), has a due process right to a bond hearing that trumps the statute. There is, however, an abundance of authority recognizing that there is a constitutionally significant distinction between the due process rights of inadmissible and deportable aliens. Indeed, the Supreme Court held long ago that "aliens who once passed through our gates, even illegally" are entitled to due process protections, while those "on the threshold of initial entry," like Hong, "stand[ ] on a different footing." *Mezei*, 345 U.S. at 212, 73 S.Ct. 625.

In *Mezei*, the Supreme Court held that a long-time lawful permanent resident alien who left the country without authorization or reentry papers and remained behind the Iron Curtain for 19 months could constitutionally be excluded from the country and detained at Ellis Island indefinitely without a hearing. In so holding, the Supreme Court recognized that Mezei, as a

---

**16.** *See, e.g., Carlson v. Landon*, 342 U.S. 524, 534, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (recognizing that "[s]o long...as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders") (citations omitted).

resident alien seeking admission to the country, was not entitled to the same constitutional protections in removal proceedings as a resident alien continuously present in the United States. Indeed, while aliens already present in the United States, even illegally, "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law," aliens "on the threshold of initial entry" are entitled only to "the procedure authorized by Congress," for "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* at 212, 73 S.Ct. 625.

The Supreme Court again recognized a distinction in the liberty interests of inadmissible and deportable aliens in *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Specifically, in that case, the Supreme Court held that a lawful permanent resident alien who had traveled to Mexico for only a few days and later attempted to smuggle aliens back into the United States was entitled to due process, namely a hearing on the exclusion charges, given the shortness of her visit.[17] In so holding, however, the Supreme Court recognized that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application," while "a contin-

uously present resident alien is entitled to a fair hearing when threatened with deportation." *Id.* at 32, 103 S.Ct. 321.

This important distinction recognized in *Mezei* and *Plasencia* between the liberty interest of inadmissible aliens seeking admission into the country, and the liberty interest of aliens already present in the country, has never been altered. In fact, the Supreme Court recently reaffirmed this distinction in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), recognizing that "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Id.* at 693, 121 S.Ct. 2491.[18] In *Zadvydas*, the Supreme Court construed the INS's post-order custody statute, 8 U.S.C. § 1231(a)(6)—a statute not applicable here—to limit generally the INS's post-order detention of deportable aliens to six months if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* After that six-month period, it is incumbent on the INS to rebut a showing by the detained deportable alien regarding the significant likelihood of his or her removal. *See* 8 C.F.R. § 241.13 (2002).[19]

Since *Zadvydas*, several circuits have likewise recognized a distinction in the due

---

**17.** Citing to *Mezei*, the Court in *Plasencia* noted that "[i]f the permanent resident alien's absence is extended, of course, he may lose entitlement to 'assimilat(ion of his) status'...to that of an alien continuously residing and physically present in the United States." *Id.* at 33, 103 S.Ct. 321.

**18.** The *Zadvydas* Court further recognized that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to 'all persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent....though the nature of that protection may vary depending upon status

and circumstance...." *Id.* at 693, 121 S.Ct. 2491 (citations omitted).

**19.** Specifically, 8 C.F.R. § 241.13 sets forth certain post-removal order custody procedures for removals the INS is unable to execute by the end of a six-month period. Hong is not entitled to the benefit of these procedures, however, as he is an inadmissible alien. *See* 8 C.F.R. § 241.13(b)(3)(i) (stating that "[t]his section does not apply to (i) arriving aliens, including those who have not entered the United States, [and] those who have been granted immigration parole into the United States").

process rights of inadmissible and deportable aliens.[20] And, as discussed above, the Ninth Circuit's split panel decision in *Xi v. INS*, 298 F.3d 832 (9th Cir.2002), extending the *Zadvydas* holding to inadmissible aliens, simply does not comport with Supreme Court precedent. *See supra*, p. 632–33. Nor is the Fourth Circuit's recent decision in *Welch v. Ashcroft*, 293 F.3d 213 (4th Cir.2002) of any aid to Hong, as that case involved a deportable alien already present in the United States, rather than an inadmissible alien denied admission into the country.[21] Specifically, the Fourth Circuit in *Welch* held that § 236(c), while facially constitutional, violated due process as applied to Welch, a longtime resident alien with extensive domestic connections whose deportation was only possible, not certain.[22] *See id.* at 224–28. Unlike Welch, Hong is an inadmissible, rather than a deportable, alien, and his impending removal to Korea is indeed certain.[23]

Simply put, Hong's liberty interest, as an inadmissible alien seeking admission into the country, is more attenuated than the liberty interest of a deportable alien already present in the country. This being said, it is clear that § 236(c) is constitutional as applied to Hong and that his continued detention pending removal to Korea does not violate his Fifth Amend-

---

**20.** *See, e.g., Hoyte–Mesa v. Ashcroft*, 272 F.3d 989 (7th Cir.2001) (recognizing that despite *Zadvydas*, the United States can still "constitutionally detain an *excludable* alien indefinitely if his country of origin refused to accept his return") (emphasis added); *Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir.2001) (holding that "[t]he Due Process Clause does not provide [an excluded Mariel Cuban]...a liberty interest in being released on parole"); *Ma v. Ashcroft*, 257 F.3d 1095 (9th Cir.2001) (preserving the distinction between aliens who have entered the country and those who have not).

**21.** The Fourth Circuit held in *Welch* that criminal aliens who are detained pending deportation have a significant liberty interest, but not a fundamental liberty interest. *See id.* at 221. That being so, the Fourth Circuit applied "a less exacting inquiry" to Welch's due process claim, namely whether Welch's detention was "reasonably related to legitimate government interests" and whether his detention constituted punishment. *See id.* at 222. Although *Welch* is not directly applicable here, it is worth noting that it is clear from the record that Hong's detention is reasonably related to legitimate government interests given his criminal record, including his failures to comply with probation conditions. *See supra* n. 2. It is equally clear that Hong's continued detention pending removal is not punitive in nature, but rather is a non-punitive, "regulatory" measure. *See Welch*, 293 F.3d at 222. Moreover, Hong's continued detention is further supported by the fact that his removal to Korea is "reasonably foreseeable" in the near future. *See Wang v. Ashcroft*, 320 F.3d 130, 144–45 (2nd Cir.2003) (holding that deportable alien's four-year detention without a bond hearing did not violate alien's due process rights under *Zadvydas* given that his removal still remained "reasonably foreseeable").

**22.** In this regard, the Fourth Circuit noted in *Welch* that the immigration judge made the express finding that Welch's case presented "exceptionally appealing humanitarian facts" and that his naturalization application was likely to succeed. *See id.* at 225.

**23.** Also of no avail to Hong is *Ngo v. INS*, 192 F.3d 390 (3rd Cir.1999), where the Third Circuit held that "excludable aliens with criminal records...may be detained for lengthy periods when removal is beyond the control of the INS, provided that appropriate provisions for parole are available....[and that] [w]hen detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable." *Id.* at 398. Unlike Ngo, a Vietnamese refugee who had been detained by the INS for more than four years and whose removal to Vietnam was proceeding "at a speed approximating the flow of cold molasses," *id.* at 398, Hong has been detained by the INS for less than one year and his removal to Korea is reasonably foreseeable in the near future.

ment Due Process rights. Hong also is not constitutionally entitled to an individualized bond hearing, as he suggests. To the contrary, the only due process owed to Hong, as an inadmissible resident alien who left the country for an extended period of time, is adequate notice and an opportunity to be heard on the underlying removal charges.[24] This Hong has clearly received. Thus, he has received all the process he is constitutionally due.

## IV.

Accordingly, because Hong's liberty interest as an inadmissible alien is insufficient to trigger a Fifth Amendment Due Process right to an individualized bond hearing, Hong's habeas corpus petition, filed pursuant to 28 U.S.C. § 2241, must be denied.

An appropriate Order will issue.

---

**24.** *See Plasencia,* 103 S.Ct. at 330 (recognizing that a "resident alien returning from a brief trip abroad...is entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him").

Moreover, Hong's entitlement to even this due process is questionable given that his most recent six-month excursion to Korea was not "a brief trip abroad."