**Sonni I. WILSON, Petitioner,**

v.

**Charles J. ZEITHERN, et al., Respondents.**

**No. CIV.A. 02–130–AM.**

United States District Court, E.D. Virginia, Alexandria Division.

June 5, 2003.

---

Sonny I. Wilson, Hanover, VA, pro se.

Rachel C. Ballow, Assistant United States Attorney, Alexandria, VA, for Respondents.

### Memorandum Opinion

ELLIS, District Judge.

Petitioner Sonni I. Wilson (Wilson), an Immigration and Naturalization Service (INS) detainee proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the constitutionality of his detention pending removal. By Order dated January 7, 2003, this action was consolidated with Civil Action No. 02–1800, Wilson's later filed and closely related civil action.[1] This Order

---

1. *See Wilson v. Zeithern,* No. 02–130–AM (E.D.Va. Jan.7, 2003) (order consolidating 02–130 and 02–1800).

also required respondents[2] to show cause why the writ should not be granted. They did so, and on April 9, 2003, Wilson filed a reply and thus, this matter is now ripe for disposition. For the reasons that follow, the instant petition must be dismissed.

## I.

Wilson, a native of Nigeria, entered the United States illegally and without inspection on August 8, 1987. On November 13, 1991, after living here illegally for four years, he sought to legalize his status by applying for political asylum. Yet, he failed twice to appear before the INS for the required and properly-noticed asylum interview, and hence the INS referred the case to the Immigration Court. Following this, it appears that Wilson remained in the United States for several years, all the while avoiding any further contact with the INS. Then, on June 11, 1999, Wilson was convicted in the United States District Court for the District of Columbia of bank fraud, conspiracy, and possession of fraudulent identification documents. As a result of his convictions, he was sentenced to 51 months in prison.

Wilson's convictions brought him to the attention of the INS, which then issued a detainer for him. On February 23, 2001, the Court of Appeals for the D.C. Circuit affirmed Wilson's convictions, but vacated his sentence, and remanded the case for further proceedings. *See United States v. Wilson*, 240 F.3d 39 (D.C.Cir.2001). Thereafter Wilson was re-sentenced, this time to 41 months in prison. On September 18, 2001, the INS issued a new detainer for Wilson, pursuant to which Wilson was delivered to INS custody on September 28, 2001, the date on which he completed his sentence. Thereafter, on October 4,

2001, the INS notified Wilson that it had commenced removal proceedings against him.

At Wilson's removal hearing on January 24, 2002, an immigration judge determined that Wilson was subject to removal under Immigration and Naturalization Act (INA) § 212(a)(6)(A)(i) and ordered him removed to Nigeria. Wilson noted his appeal, but subsequently withdrew that appeal in February of 2003.

Wilson was scheduled for removal on May 13, 2003. In a letter to this Court, he asserts that on the day of his scheduled removal he was threatened and coerced by federal agents in an effort to force him out of this country. In reply, respondents submitted the affidavit of Wilson's deportation officer, which states that when Bureau of Immigration and Customs Enforcement officers attempted to proceed with Wilson's removal, he became combative and physically resisted, thereby frustrating the efforts to effect his removal on that date. As a result, Wilson's removal has been rescheduled for June 11, 2003.

Wilson filed the instant petition on January 24, 2002. In it, he claims that his "arrest," by which he apparently means his detention by the INS following completion of his federal criminal sentence, and his continued detention pending removal, violate the Constitution. He does not challenge the authority of the government to remove him. Respondents assert that the government has the power to detain Wilson as an inadmissible alien pending his removal, which is imminent, and ultimately to remove him to Nigeria.

## II.

A threshold issue in this case is whether Wilson, who entered this country

**2.** Named as respondents in the petition are the INS and three officials of the INS: Charles J. Zeithern, Assistant District Director; Ashly Ivery, Deportation Officer and Warren A. Lewis, District Director.

illegally, is an "admitted" alien or an "inadmissible" alien. The distinction between these two classes of persons has long been the central factor in judicial determinations of the extent of the government's authority to detain an alien pending removal and how long that detention may last without running afoul of the Constitution. Thus, as the Supreme Court noted recently, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis,* 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). The premise behind this distinction has been that inadmissible aliens, who stand "on the threshold of initial entry," are situated both geographically and legally outside the bounds of due process protections available under the United States Constitution. *See id.* at 693, 121 S.Ct. 2491; *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *Hong v. United States,* 244 F.Supp.2d 627, 633–34 (E.D.Va.2003). Put differently, admission to the United States is a privilege, and an alien seeking admission to the United States "has no constitutional rights regarding his application"; by contrast, "a continuously present resident alien is entitled to a fair hearing when threatened with deportation." *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

This distinction, although well established and still in effect, was made more complicated by the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which amended key provisions of the INA regarding admission and inadmissibility.[3] Under the INA as amended by the IIRIRA, mere presence in the United States does not constitute admission; rather, admission is the "lawful entry of an alien into the United States after inspection and authorization by an immigration officer." INA § 101(a)(13)(A); 8 U.S.C. § 1101(a)(13)(A); *see also* INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (establishing that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible"). It follows, therefore, that persons who, for example, enter the United States by clandestinely crossing the border between this country and Mexico without documentation and without passing inspection are all removable as "inadmissible." They are, in INS parlance, "EWIs," an acronym for "entrants without inspection." In other words, the IIRIRA amendments sought to ensure, sensibly enough, that those who enter the country illegally, without proper inspection and admission by immigration officials, are not treated more favorably under the INA than those who seek admission through proper channels, but are denied access.[4]

**3.** *See* David A. Martin, Graduated Application of Constitutional Protection for Aliens: the Real Meaning of *Zadvydas,* 2001 Sup.Ct. Rev. 47, 64–65 & n. 44 (discussing the intent and impact of the IIRIRA and the new "dividing line" of "admission following inspection" rather than mere "entry into the United States").

**4.** Unlike the present case, *Hong* did not involve removal under 8 U.S.C. § 1182(a)(6)(A)(i), based on illegal entry into the country without admission after inspection, but rather removal under 8 U.S.C. § 1182(a)(2), based on criminal history. *See Hong,* 244 F.Supp.2d at 629. And the petitioner in *Hong,* unlike Wilson, was outside the country seeking admission when he was ruled inadmissible. *See id.* Thus, *Hong* properly did not address the effect of an EWI's statutorily-declared "inadmissibility" on the due process rights of an illegal alien located within the country. The statutory definition of "inad-

■ The result of this change in classification, however, is that EWIs are now classified as "inadmissible," even though they may have been physically present within the United States for some time.[5] And, although it is well settled that congressional power in the area of immigration is plenary, it is also clear that this power is nonetheless subject to constitutional limitations. *See Zadvydas* at 695, 121 S.Ct. 2491. Thus, the question presented here is whether an EWI, although statutorily classified as "inadmissible," and thereby treated under the INA as if standing on the threshold of admission and seeking entry into the country, nonetheless enjoys certain rights under the Due Process Clause by virtue of the fact that he or she has physically entered the United States and maintained a presence here for some period of time.[6]

In this regard, as was noted in *Hong*, *Zadvydas* recently affirmed the significance of an alien's physical presence within the United States, noting that there is a fundamental difference between the "liberty interest of inadmissible aliens seeking admission into the country, and the liberty interest of aliens already present in the country." *Hong*, 244 F.Supp.2d at 634; *Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491. Significantly, the majority in *Zadvydas* held that the Due Process Clause applies "to all 'persons' within the United States, including aliens, *whether their presence here is lawful, unlawful, temporary, or permanent.*" *Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491 (emphasis added).[7] In other words, the lack of due process protection for aliens located at the threshold rather than within the United States rests on a "basic territorial distinction." *Id.* at 694, 121 S.Ct. 2491; *see also Mezei*, 345 U.S. at 215, 73 S.Ct. 625 (holding that Mezei's presence on Ellis Island was not "considered a landing" and thus did not affect his legal or constitutional status). Thus, for example, the *Hong* case properly turned on the fact that that petitioner, although once a lawful resident, had left the United States for a substantial period

missible" in § 1182(a)(6)(A)(i) was neither argued nor addressed in *Hong* because the nature of that petitioner's liberty interest turned not on any statutory definition, but on the actual facts concerning his connections to this country. Thus, properly read, *Hong* addresses the liberty interest and due process rights of persons who are not only "inadmissible" under the INA, but also located physically outside the United States or at the threshold.

5. In this regard, EWIs are now similar to aliens who are paroled into the United States. Paroled aliens are permitted to enter the country, but parole is not considered "admission." *See* 8 U.S.C. § 1182(d)(5). Thus, under what is known as the "entry fiction," parolees are treated as if still at the threshold. *See, e.g., Chi Thon Ngo v. Immigration and Naturalization Svc.*, 192 F.3d 390, 397 (3d Cir.1999).

6. *See* Martin, *supra* n. 1 at 7 (noting that it is not clear whether Congress thought the change in classification of EWI's from deport-

able to "inadmissible" "might affect the constitutional status of EWIs.")

7. *See also Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (holding that "'all persons within the territory of the United States,' *including aliens unlawfully present*, may invoke the Fifth and Sixth Amendments to challenge actions of the Federal Government") (emphasis added); *Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (noting that "[t]here are literally millions of aliens within the jurisdiction of the United States," and holding that "the Fifth Amendment ... protects every one of these persons from deprivation of life, liberty, or property without due process of law," including those *"whose presence in this country is unlawful"*) (emphasis added); *Mezei*, 345 U.S. at 212, 73 S.Ct. 625 (holding that "aliens who have once passed through our gates, *even illegally,* may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law") (emphasis added).

of time and when he attempted to reenter the country, that is, before he had "crossed the threshold of this country's portal," he was deemed inadmissible by virtue of his criminal record and held in custody. *Hong,* 244 F.Supp.2d at 630. By contrast, Zadvydas was located within the United States when the INS initiated deportation proceedings against him. *Zadvydas,* 533 U.S. at 684, 121 S.Ct. 2491. Thus, the *Hong* petitioner's liberty interest was deemed "more attenuated than the liberty interest of a deportable alien already present in the country" such as Zadvydas. *Hong,* 244 F.Supp.2d at 635. As such, the petitioner in *Hong* was entitled to adequate notice and the opportunity to be heard on the underlying removal charges, but not an individualized bond hearing regarding his detention pending removal, nor was he entitled to a review of his post-order detention after six months under the ruling in *Zadvydas. Id.* at 636; *Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491. Wilson, like Zadvydas and unlike Hong, was physically present within the United States at the time the INS initiated removal proceedings against him. Thus, although he is statutorily classified as "inadmissible" under the INA, this statutory classification cannot displace due process analysis or perforce place him outside the reach of the Due Process Clause.

 Yet, this is not to say that Wilson is entitled to the same post-detention protections afforded to Zadvydas, a legal permanent resident within the United States. Not all persons located within the United States are entitled to the same level of protection under the Due Process Clause.

Instead, "the nature of that protection may vary depending upon status and circumstances." *Zadvydas,* 533 U.S. at 694, 121 S.Ct. 2491 (citing *Landon,* 459 U.S. at 32–34, 103 S.Ct. 321). In other words, while geographic presence is significant in ensuring that some degree of due process protection applies, it does not render legal status irrelevant. Indeed, the *Zadvydas* court noted that "we deal here [in *Zadvydas* ] with aliens who were admitted to the United States but subsequently ordered removed," and that "[a]liens who have not yet gained initial admission to this country would present a very different question." *Id.* at 682, 121 S.Ct. 2491. In other words, mere entry into the United States does not afford an alien the same liberty interest as admission. Surely, the liberty interest of an alien present within the country only by virtue of illegal, surreptitious entry into the country is more attenuated than that of an alien who has entered the country through official channels and been granted legal permanent resident status. Indeed, all EWIs are removable under the INA precisely because of the illegal nature of their entry into the country, making their continued presence here quite tenuous no matter its duration.[8] *See* 8 U.S.C. § 1182(a)(6)(A)(i). In other words, an EWI's status as "inadmissible" under the INA renders his liberty interest more attenuated than that of a legal permanent resident located within the United States, even if, for the reasons stated above, that statutory designation does not strip the EWI of all protection under the Due Process Clause. In this regard, then, illegally present aliens enjoy a limited liberty inter-

---

**8.** Significantly, "[i]n evaluating [the constitutional sufficiency of] the procedures in any case," courts must consider not only "the interest at stake for the individual" but also "the risk of an erroneous deprivation of the interest." *Landon,* 459 U.S. at 34, 103 S.Ct. 321. Thus, while most illegal immigrants have absolutely no legal interest in remaining in the country, the removal procedures applied to EWIs must also be viewed with regard to the possibility that a lawfully present immigrant will be erroneously deemed an EWI and wrongfully removed.

est by virtue of their presence within the United States and thus within the scope of the Due Process Clause. In other words, the extent of their liberty interest falls somewhere between that of aliens who remain outside or at the threshold of the country, who consequently have little or no claim to a constitutionally cognizable liberty interest, and aliens who have entered the country through proper channels and have been granted legal permanent resident status and who therefore enjoy a more robust liberty interest under the Due Process Clause.[9]

■ In this case, it is undisputed that Wilson entered the United States from Nigeria on August 8, 1987, without inspection by an Immigration Officer. Accordingly, he is clearly inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and thus removable pursuant to 8 U.S.C. § 1229(a). In fact, Wilson does not challenge the removal decision itself. The question here is whether Wilson may lawfully be detained pending removal and, if so, how long that detention may last before he is entitled to a bond hearing.

Here, there is no question that Wilson's detention by INS pending removal is reasonable and does not violate Wilson's limited liberty interest as an illegally present alien. Although the removal order was entered on January 24, 2002, it did not become final until Wilson withdrew his appeal in February of 2003. Thus, the currently scheduled removal date of June 11, 2003 will occur less than five months after the removal order became final. *See* 8 U.S.C. § 1231(a)(1)(B). The Supreme Court in *Zadvydas,* interpreting § 1231(a)(6) so as to avoid a conflict with the Due Process Clause, held that the statute limits an alien's post-removal-period detention "to a period reasonably necessary to bring about the alien's removal from the United States" and "does not permit indefinite detention," provided the alien is present within the United States and thus within the reach of the Due Process Clause. *Zadvydas,* 533 U.S. at 689, 121 S.Ct. 2491. More specifically, the *Zadvydas* majority held that a six month detention period was presumptively reasonable, after which confinement must end if the alien provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701, 121 S.Ct. 2491.

■ Yet, as discussed *supra, Zadvydas* dealt with the liberty interest of a legal permanent resident, and noted from the outset that aliens, like Wilson, who have not "gained initial admission to this country" present "a very different question." *Id.* at 683, 121 S.Ct. 2491. Quite simply, Wilson, as an EWI, does not enjoy the same expectation of continued residence in the country and therefore does not enjoy the same liberty interest as an alien who

---

**9.** Not reached here is the question whether parolees likewise enjoy a limited liberty interest based on their physical presence within the United States. Although such a conclusion would appear to follow from the territorial distinction reaffirmed by *Zadvydas,* and some cases appear to recognize that parolees have a limited liberty interest, other cases appear to extend the "entry fiction" to determine the constitutional as well as statutory status of parolees. *Compare Hoyte–Mesa v. Ashcroft,* 272 F.3d 989, 991 (7th Cir.2001) (noting that the Fifth Amendment does not provide a parolee "the same protections as resident aliens," and concluding that the annual review of his detention "satisfies due process") *with Sierra v. Immigration and Naturalization Svc.,* 258 F.3d 1213, 1218 (10th Cir.2001) (holding that "the Due Process Clause does not provide [a parolee] a liberty interest in being released on parole" and that "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (citations omitted).

has gained permanent resident status or is otherwise legally present in this country. Thus, the fact that Wilson's detention would be constitutional even under the *Zadvydas* standard is fatal to his constitutional claim here. Wilson's removal is scheduled to occur within the six month presumptively reasonably period after his removal order became final. Moreover, there is no suggestion on this record that Wilson's detention may be indefinite; indeed, he is scheduled for removal on June 11, 2003.[10] Thus, even setting aside the six month presumptively reasonable period, Wilson clearly cannot show that "there is no significant likelihood of removal in the reasonably foreseeable future," as required by *Zadvydas*, because his removal appears not only foreseeable but imminent. As such, it is clear that Wilson's current detention pending removal does not violate his limited liberty interest as an illegal alien present within the country.

### III.

In sum, petitioner's constitutional challenge to his detention pending removal fails. Wilson's liberty interest as an EWI is plainly of lesser constitutional stature than that of an alien who is a permanent legal resident, yet his detention is constitutional even under the *Zadvydas* standard. Furthermore, Wilson cannot show that his continued detention is unreasonable, given that his removal appears imminent and certain. Accordingly, the instant petition is dismissed. An appropriate Order will issue.

---

10. In this regard, Wilson's own actions in physically resisting removal, and thereby delaying his removal, cannot render his detention by the INS unreasonably lengthy. Wilson cannot convert a detention of reasonable length to one of unreasonable length through his own efforts to thwart removal.